Consolidated with Melanie Garcia v. Wells Fargo Bank Thank you, Your Honors. May it please the Court, my name is Sonia Winner. I am here on behalf of the appellant. The central question in this appeal is whether a defendant in a class action that has arbitration contracts with every member of a certified class can be deemed to have waived that arbitration right solely because it did not enforce its separate arbitration contract with the plaintiff. Counsel, let me tell you where I see this case. This is a classic case of issue preclusion. Are you familiar with issue preclusion? I certainly am, Your Honor. An issue was decided in the first case. What has never been decided is whether or not the contracts are valid to compel arbitration. What has been decided in the first case was on the Faxonet case, Wells Fargo and the others waived the right to arbitration. So under the doctrine of issue preclusion, to me, the most serious question is whether or not the plaintiffs coming in are in privity with the named plaintiffs in the case before. Yes, Your Honor. And the Supreme Court has spoken pretty clearly about that. If they are in privity, then if several people filed independent lawsuits and the court consolidated them, they would also be in privity. So that's where I come from about this case. It's a classic issue preclusion case in which the issue that was decided in the first case was under certain facts a waiver occurred. Yes, Your Honor. And the waiver was pursuant to a contract, contracts with the named plaintiffs. And as this Court observed in Spears-Haymond, in the Spears-Haymond appeal when we were up here previously, issue preclusion does not apply in this situation because the every Wells Fargo customer has his or her own contract with the bank, has his or her own arbitration obligation under that contract. And the mere fact that the bank did not enforce its arbitration right in a different contract with a different customer does not mean that it has waived its arbitration right under its contracts with these customers. This is analogous also to what this Court decided in the IVACS case in which the Court rejected an argument that a, well, the facts in that case were that a, the defendant had a contract with the plaintiff that had an arbitration clause. The defendant had sued, actually affirmative brought suit against the plaintiff's accountant, and the plaintiff argued that that action constituted a waiver of the arbitration right. And this Court held that, no, that was not true because the contract under which that other's lawsuit had been brought was a separate contract that the defendant had with the, with the accounting firm. And that, therefore, you know, the new lawsuit under which arbitration was sought was under a different contract with a different party, and waiver did, the waiver did not extend. What do you say about the District Court's partial rationale that given the way that the banks have litigated or not litigated the arbitration issue in these cases, everybody's devoted five, six, six and a half years to litigation on substantive motions to dismiss, certification of a class, everything else, and now if you're allowed to assert the arbitration clause, all of that work, both for the parties and for the Court, and the resources expended, go by the wayside, and that it all could have been avoided had you initially asserted your arbitration rights with regards to the named plaintiffs and had that issue resolved one way or another? Well, that, that is certainly true, but it was the defendant, it was the plaintiffs that chose to pursue this litigation. But it was, but it was the banks who affirmatively told the District Court that they were not going to seek arbitration. As to the named plaintiffs, and you're on... I understand that, but you can't say that, you can't blame the plaintiff for filing suit when you tell the District Court that as to that plaintiff, you're not seeking arbitration because you could have gotten rid of those named plaintiffs or potentially gotten rid of those named plaintiffs by asserting your arbitration rights in a timely fashion in the first place, and you would have never hit class certification had you been successful. That is true, but the, but the plaintiffs didn't have to move for class certification either. I mean, this, this, this motion that we're currently talking about today is not directed at the named plaintiffs. That's been resolved. There was a waiver as to them. But at the same time, we've been very clear from the outset of this case, including explicit statements in our answers, explicit statements in separate filings with the District Court that there were arbitration rights against the unnamed class members. The plaintiffs chose, knowing that, to proceed with the litigation, to proceed through class certification, at which point we again, you know, raised it with the District Court and said, you know, there's no numerosity here because every member of this class has an obligation to arbitrate. And the District Court rejected that argument on the ground that it was premature. But going back to the procedural history, you told the District Court that you were not going to seek arbitration against the named plaintiffs, and then you did. Well, that was because they're what, because of the conception on decision to change things. I mean, parties choose their litigation strategy and sometimes they predict the future correctly and sometimes they don't. And sometimes they don't, and we did not. And the Garcia decision is binding in this case. So as to the named plaintiffs, but in the Garcia, even during, while we were litigating what became the Garcia appeal, all during that time, we kept saying, by the way, we also have arbitration rights against everybody in this class. And that's not right yet. And the plaintiffs, it's interesting, the plaintiffs never said a word of disagreement during all of this time. They never, they never said, no, no, it's right, it's right, but we've got to decide this now. They didn't raise that issue. They didn't raise that argument until we got to class certification and filed our arbitration motions, and we started talking, you know, litigating the arbitration obligations of the unnamed class members, and then suddenly said, oh, now it's too late. But they did not, they didn't move to strike our answer. They didn't object. Your answer couldn't have been struck at that time. I agree. But they did not, because it was premature. I mean, that's the point, is that the, the unnamed class members, now, no federal. Not because it was premature. It's because you can't resolve, they couldn't deny that there was a clause in the contracts, but the validity and enforceability of the clause hadn't been litigated, so you couldn't move to strike any part of the answer based on that. Well, exactly, Your Honor, because the unnamed class members, as the unnamed class members, they were not yet before the court. And that's all, you know, and that's the position we've always taken. We've been very straightforward. No federal court has ever held that you have to move to compel arbitration against the class. Well, the issue hasn't been presented. The issue's been presented numerous times, and waiver has been found in situations where, in two kinds of situations. One situation where after class certification, people kept litigating for months or years and slept on their rights, even after class certification. That's an easy case, I would, I would suggest. The other situation has been where the defendant hit the ball, basically. And that's the Cox case, the Cox Enterprises case is the most often cited case on that point, where it said the defendant didn't say anything in their answer about arbitration, they didn't say anything during class certification, they fought class certification without mentioning arbitration, and then after that, suddenly sprung the arbitration. Courts have come out different ways in that situation, but in any event, that's not the situation we have here. We did not hide the ball. Wells Fargo was always very clear. The only thing that it didn't do is it did not move to compel arbitration from the unnamed class members. There was nothing else that it could have done that it failed to do. You know, until the class was certified, those parties were not before the court. Wells Fargo did not have an ability to enforce its arbitration rights. It kept reminding everybody that they were there, but it couldn't do anything else about them. And I would submit, Your Honor, that to apply what is effectively would-be issue preclusion here would be completely inconsistent with this Court's decisions, including Spears-Haymond, the IVAC's decision, there are other, numerous other decisions of this Court, both generally But the United States Supreme Court, in the Taylor case, was the last word on issue preclusion, which it dealt with privity. Yes. But they abolished any idea of privity in a circumstance like this, in my view. I think that's right, Your Honor, and also more generally, the United States Supreme Court has been crystal clear that the point that in a class action And there's no, I don't know of any case where privity was abolished. If that's the case, we are in trouble with some other cases that are pending in our court. But if privity is abolished because a lawyer in one case says something and happens to be in the second case, and so the issue in the first case binds the second case, that in my view would be a radical departure from the doctrine of issue preclusion, and hence pre-court precedent. Well, the Supreme Court has been particularly clear in the class action context that the plaintiff does not stand in the shoes of the absent class members. The Standard Fire Insurance Company, Mr. Knoll's case. Well, it's more than in the shoes. They have to have some kind of what is called privity. Yes, Your Honor. I believe that's correct. This was really an extreme finding of waiver in this situation where you had a defendant that had rights or nascent rights. The rights had not become ripe because the parties were not before the court. And those rights could not be taken away. And again, I would cite to Your Honor also the Walmart v. Dukes case from the United States. The class action mechanism cannot be used to abridge the substantive rights of the defendant. It is a procedural mechanism for litigating claims, but you cannot use the class action mechanism as a way to take away a defendant's defenses against unnamed class members simply by bringing them into a class. Thank you, Your Honor. Mr. Rogo. May it please the Court, Bruce Rogo, Adam Webb, Stephen Rosenthal for the Appellees in this case. There are four cases that really design the outcome of this case. Spears-Hayman, Krinsk, Collado, and Garcia. We embrace all of them. Had the bank enforced its contractual rights at the very beginning, we would not be here. If they had enforced the contractual rights against the representative plaintiffs, the cases would have been sent to arbitration. There would be no class action. And they made a strategic decision not to do so. They took that risk in deciding to do it that way. And then the case proceeded, as proceeded since 2008. Counsel, are you tying an awful lot to lawyer behavior here? No. None at all to lawyer behavior. The bank made . . . No, no. To lawyer representations. I assume that the lawyer follows the bank's instructions. The first litigation had to do with the lawyer's behavior in representing the client.  The waiver . . . They pled arbitration, and the response was you waived it. They did not plead arbitration, Judge Schovane. No, no, no. They sought arbitration and lost. They did not. But the response to the seeking of arbitration was that you've waived it, the right. With regard to the class, yes. In the first go-round, the case that came up to us before . . . That was Garcia. Yeah. Yeah. In Garcia. In Garcia, they did not . . . That's the point. They did not raise arbitration, and that's why Garcia held . . . No, no, no. In Garcia, they tried to raise arbitration later. That's correct. And they lost because they waived. Exactly. Okay. And so the court litigated the waiver issue. In Garcia, yes. Yes. And that's what was litigated. Yes. All right. Okay. And then we go from there. And then we go . . . Then there's class certification, and then we have some new plaintiffs. Well, in between, of course, there's a lot of litigation in between, and Garcia makes that clear, 900,000 documents, et cetera, et cetera. Whatever. So the question is, now that there's class certification, their position is, well, now we can raise it again. As Judge King found, no. You substantiate . . . Let me ask you this, Mr. Rogoff. Let's suppose there were 100 cases filed separately by class persons, and they were consolidated by the district court. Okay? Yes. Would you make the same argument? If they did not raise arbitration . . . Same lawyers, same parties, same everybody. Instead of having an unnamed class, we don't know who they are, the class individually file lawsuits, and they are consolidated by the MDL panel before Judge King. Same argument? If they did not raise arbitration, yes. No, same argument. They move . . . The cases are now before Judge King, and they move for arbitration timely, right away. At the same time that they have waived the others? No, they . . . Tell me again, please. No, the question is this. Case one gets filed, okay, by one plaintiff. Yes. Or one or two or three. They delay in seeking arbitration. They raise it, the district court finds way too late, finds waiver, appeal, this circuit affirms you've waived, can't get arbitration. A year later, two years later within the statute of limitations, there are another 50 cases filed by individual plaintiffs, and I think Judge Schoflat's question to you is, would you argue waiver in that second wave of 50 cases based on the waiver in the first case? I think that's what he was asking. Yes, that's the point. If they were not a class action, I would not . . . No, I understand. I'm saying, Judge Schoflat, if these were . . . Are you saying there's a difference between class action and no class action? There is, and this court has said . . . Forget this court.  Yes. On a clean slate. Clean slate. We have two consolidated appeals. We have this appeal and we have another appeal where people in the class independently filed suit and they're all consolidated. The argument is, and they move for arbitration in both settings, and the question I have is, is the rule the same in both cases, in both settings, that they've waived because of the first case? If these are separate individual cases, the answer . . . Then, people, they're so identical, they're twins. They're twins or triplets, I think it's . . . They're not primitive, but they're identical, yes. But they are separate, independent cases that are filed. We've got a hundred cases here of people who are class plaintiffs and who filed before class certification, so you've got a hundred lawsuits consolidated before Judge King and then he certifies the class, and you've got the rest of them. They move to compel arbitration in both cases, and my question is, is there waiver in both settings? No. There's waiver at the beginning, and you're talking about separate, independent people who come along. No, I'm talking about post . . . Then, they are . . . The district court doesn't have jurisdiction over either of the groups until first there's class certification in the one, and the second one now has the other cases. Well, let me . . . Maybe I'm confused by the hypothetical . . . I want to know whether or not issue preclusion applies in both settings. This is not an issue preclusion case. That's the simple answer to this. This is a waiver case based upon the totality of the circumstances. If issue preclusion is better for me, it's an issue preclusion case, but it is not the way I assess this, an issue preclusion case. This is the case where when you look at . . . and that's why there are four cases . . . He relied on the ruling in the first case, on the waiver. Well, here are the four cases, and there's no question there's waiver. He relied on the waiver in the first case, did he not? He did. Okay. Garcia confirmed that there was waiver. Yes. He relied on that. He did. Yes. And the next . . . That was the end of the argument. That's right. There was waiver. I call that issue preclusion, given another name. Well, I think the other name is important in this case because that's what it is. What's the other name? The other name is waiver. We know about waiver. Love the case. Let me . . . Is there another name whereby you import a ruling in one case, even in a class action? Issue preclusion . . . You've got a thousand people who are not before the court, and now you bring them before the court. Issue preclusion would be that name. If that is . . . issue preclusion would be that name. All right. And this . . . You agree that issue preclusion can't work? It can work, yes. It can? It can work. Issue preclusion can work if someone fails to . . . Is there a brevity . . . . . . between these parties? Is there a brevity between the people who are brought into the lawsuit through the class certification and Garcia? Yes. There is brevity. Yes. What's your best case for that? Between the . . . because . . . well, for example, under the statute of limitations is told under Armstrong Piper . . . There's lots of cases, lots, some in the criminal context, some on death row, where you have . . . say, you've got an issue in this case, and somebody wants to import it to another case. And under your argument, the first case decides everything. Well, let me say this. This wasn't my argument, and I didn't start out with this argument, so . . . Well, you say that issue preclusion applies. Well, issue . . . if someone litigates an issue, and then . . . and they lose on that issue . . . They lost on the issue of waiver. They lost on the issue of waiver, and if someone is in privy . . . But on a set of facts, would you agree with that? Yes. There were the set of facts in Garcia, and they lost. Yes. Those set of facts are not yet there in the cases that are new. They are not there. No, they couldn't be there, because the cases weren't there. They are not there. But in the case of the class . . . this Court, in your opinion, Judge Schofield, in Krinsk, I think sets out what this is all about. Here's how I see it. So, you have Garcia saying that there was waiver. You have Krinsk saying, well, we'll relieve someone of waiver if the nature of the case has changed. And the point here is, and that's why I started at the very beginning. At the very beginning, had they raised . . . and Judge Jordan pointed to this. Had they said, we are invoking arbitration as to the name class representatives, the case would have been over. There would be no case, no class, no nothing, because nobody could represent a class. That would be the end if they had raised that. They didn't. So, they took that risk. And now we're in a situation in which the case proceeds for eight years, and class is certified, and now they say, we can now . . . Well, let's suppose it was one year. Pardon me? Suppose it was one year old. You'd look at the . . . Same argument, one year? It would be the same argument. The facts would be different. But here . . . No, no. There was a waiver and just truncated time. Take the time and the work out of the picture. Any difference? There could be. There could be. But on the facts of this case, there . . . It could be. You mean we're on one of these strings where a little bit doesn't matter and this much matters? No. I actually rely upon your decision in Krinsk. Because in Krinsk, you said in Krinsk . . . I don't want to say it in Krinsk. I know. But that's why it's an important case to us, because you were right in Krinsk. If there is a change in the nature of the case, if there is a change in the nature of the class, a change in the nature of the claims, then you can revive your failure to have asserted arbitration. I mean, if you believe in arbitration, then the key to this is, it's a contract right, and you assert it right away. And if you assert it right away, the case is out of the courts. And that's the whole purpose of the FAA. So what they have failed to do, this is the risk that they took. They failed to assert it right away to ensure that this would never be a class action, because we'd never get there. And then, years and years later, with much litigation, as Garcia has pointed out, they now come back and say, well, now we're going to raise it with regard to the class. And by the way, they never said they had an intent to assert it as to the class. They said, we reserve our right. What difference does it matter? Well, I don't think it does make a difference on this record. It makes no difference on this record. You said, you said, and again, I'm coming back to your decisions. You said, Spears Hayman, we can conceive of no reason why the class, once certified, can assert this claim that they had waived it. And that's exactly what we're doing. We're here. We're here. So, the class is certified. Spears Hayman said that we could assert it. We're asserting it. And now you look at the totality of the circumstances and whether or not- You can always assert something. You can always assert issue preclusion, but whether or not you can succeed is a whole different question. It is. But I don't think, in the opinion in Spears Hayman- That case wasn't dealing with issue preclusion. It was not? No, in the Constitution. That's right. It was not dealing with issue preclusion. It's dealing with exactly what we're talking about here. I understand, but it was not dealing with issue preclusion in the United States Constitution. Under which issue preclusion is it? I agree. It was not dealing with it. It was dealing with that it was premature to address waiver at that point because the class hadn't been certified. And it said, once the class is certified, then you can address this.  You can try it. You can do whatever once it's certified. Yes. And that's what we're doing. Mr. Rogo, let me approach the issue from a slightly different perspective, a class action perspective. What is the law, to the extent you know, of the binding effect on rulings as to name class members on the class once the class is certified? In other words, there are substantive rulings made on the merits of a case before class cert, maybe on a motion to dismiss, say, and then the class gets certified. Is the class bound by rulings made as to the name class representatives who are supposed to be symbolic of the class? They would be, assuming that they haven't opted out. Therefore, they'd be bound by what the nature of the case is and decisions that have been made. So, is there an argument that the same sort of general rule would apply here, given that the issue is the same, although based on separate individual contracts? Well, certainly one can make that argument. And I think that's where we're discussing whether or not the argument my opponent makes is, no, you can't. It's a clean slate. Once the class is certified, these are new people. We can do anything we want with regard to them. And what we're saying is that's not so. You have to take a look at what the litigant has done in failing to raise arbitration in terms of deciding the effect on the class. And our position is— The argument is that they better not opt out. Well, they certainly— They better not opt out. After certification, they better not opt out or they lose all these things that the first case decided. Well, I think, yes, opting out. In these cases, these are uniform contracts. No, no, no, no, no, no. If half of this class had got certified, opted out because they don't like—for a variety of reasons, your argument is in the separate lawsuits, they would have the same issue preclusion. By virtue of what had happened before. Because of what happened in the first case, they are—the issue of waiver of arbitration is settled. They file a motion to compel arbitration the day after the suit's filed. And the counter to that is it was waived because the issue was decided in Garcia. That is one answer. And the other answer is the Krinsk answer, that there was no change when the class was certified. But they were opted out, Mr. Rogoff, so they're not in the class. Well, if they've opted out, they have a different argument. But the four cases, really, the four cases are Garcia, Krinsk, Collado, and Garcia. And I think putting all those cases together, Judge King's decision that the waiver, the substantial litigation, results in a waiver and the class can assert that waiver successfully. Thank you. Ms. Wehner. Thank you, Your Honor. The Krinsk case—the Krinsk case is not terribly on point here, Your Honor, because that case dealt with the question of whether a waiver that had been made as to the name plaintiff was wiped out as to the name plaintiff because of a change in circumstances in the case. So that rather more on point, I would say, is probably the Collado case that Mr. Rogoff also referred to. That was not a class action. But that case involved a situation in which there were some claims in the case. There was a waiver of arbitration rights as to those claims. And then the complaint was amended so that new claims, state law claims, based on largely the same facts, were brought into the case formally for the first time. And this court held in Collado that because those claims were not before the court when the original waiver occurred, there had been no waiver as to those claims. And not only that, the amendment is in the same case. Yes, it was in the same case. That's not an issue preclusion case. Yes. Here we have a situation, I would say— That would be an aborted attempt at law of the case doctrine. And I think Your Honor is definitely on the right track about focusing on the analogy to separate cases that might have been brought in. And I think Mr. Rogoff's concession that there would be no waiver in that situation should pretty much decide things here. Because effectively, that's what class certification does. Class certification brings new claims into the case that were not there before. They were not before the court. Court had no jurisdiction over those contracts, over those parties. And again, we're talking about separate contracts, separate arbitration obligations. And in that situation, class certification, as I think what Your Honor said in Spears-Hayman, that's what brings what used to be hypothetical claims and reifies them as actual claims that are before the court. They're actual parties that are actually before the court. And the waiver analysis begins at that point. Can I ask you a practical question? Certainly, Your Honor. If you win and you can assert the arbitration clauses, do you have to litigate them individually as to every class member? We shouldn't have to, Your Honor. What if they all have—what if you were right and they're all different? When you oppose class cert and they all have different arguments as to why, as to them, the arbitration agreement shouldn't be enforceable? The practical answer to that would be the class should be decertified at that point because you have individualized issues. And that's what happens when there are individualized issues as to arbitration in the class context. Typically class certification is denied. So if you lose on—if you're allowed to assert the arbitration clauses but lose, you lose as to the class? I'm sorry. You mean as to enforceability? Yes. Is that what you're talking about? So if you lose, you lose class. You either win class-wide or you lose class-wide is your answer. Well, it depends on how the court analyzes the argument. No, no. From your perspective. From my perspective, at this point we have a certified class. We don't have enforceability arguments that have been really made at this point. Our position is that the enforceability arguments have been largely abandoned. The plaintiffs have hitched their star to the—I think I have the wrong metaphor. But they have—they've gone all or nothing on waiver at this point. The arbit—in the course of this MDL with a number of banks, all the enforceability arguments they could come up with have been decided and they've been rejected, which is why they didn't really brief it below. They didn't—when they drafted opinions that the district court adopted, they didn't put any enforceability arguments in there. At this point, our position is waiver is the only game in town for them at this point. And if there is no waiver, there should be a simple reversal with the direction that the arbitration clauses should be enforced according to their terms. Well, the district court hasn't passed on the arbitration clauses, right? The only issue before us is whether or not the district court's ruling with regard to waiver is correct because the district court hasn't passed on the merits of the arbitration argument yet. Well, our position is that it was—is that those arbitration arguments were waived below. I know, but that's not for us to pass in the first instance, right? I believe this court could do so, alternatively. But the argument—the waiver argument is, in the old time lingo, it's a confession and avoidance argument. It's like a statement argument. You may have a case, but it's barred. Yeah, that's— That's what waiver is. You have an arbitration case, but it's barred. You waived. That's— It's confession and avoidance. You concede, forsake in discussion the merits of the claim. Yes, Your Honor. So it would have been pure dicta—well, it could have been an alternative holding. Exactly. It could have been an alternative holding. But again, it was not really— But I don't see that it was. It was not really presented below, Your Honor. No. Thank you, Your Honor. The court will be in recess until 930 in the morning. All rise.